UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHANNON TOWNES,

    Petitioner,

v.                                                                            Civil Action No. 3:08CV526

PATRICIA R. STANSBERRY,

    Respondent.

## MEMORANDUM OPINION

    Petitioner Shannon Townes, a federal inmate proceeding *pro se*, submitted this petition for a writ of habeas corpus under 28 U.S.C. § 2241 claiming entitlement to a one-year sentence reduction.[1] On December 15, 2008, Respondent filed a motion to dismiss, arguing only that Petitioner had failed to exhaust the claims in his petition. Petitioner filed a response on January 5, 2009. On June 23, 2009, the Court ordered the parties to submit further briefing on the issue of futility of exhaustion and on the merits of Petitioner's claims. The Court received supplemental briefs from Respondent on July 6, 2009, and from Petitioner on July 20, 2009. Because Petitioner claimed to lack access to an unpublished decision cited in the Court's Order of June 23, 2009, the Court, by Order entered July 21, 2009, provided a copy of the case and allowed Petitioner five additional days to file a supplemental brief. Petitioner has not responded. The matter is ripe for disposition.

---

    [1] "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citations omitted).

## I. Procedural History

Petitioner was sentenced on January 4, 2006, to a 57-month term of incarceration for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Respt.'s Mot. Dismiss Ex. 1 (Decl. of Lynnell Cox ¶ 3).) Petitioner subsequently entered the Bureau of Prisons' ("BOP") Residential Drug Abuse Treatment Program ("RDAP"). Federal law authorizes the BOP to reduce by up to one year the sentence of any RDAP graduate who was not convicted of a violent offense. The BOP, however, has promulgated a regulation rendering inmates convicted of offenses involving the use or possession of a firearm categorically ineligible for early release under this program. Accordingly, on December 7, 2007, the BOP found Petitioner ineligible for early release due to Petitioner's conviction for being a felon in possession of a firearm. (Pet. Ex. A (RDAP Program Notice to Inmate).) Petitioner completed the RDAP program sometime in 2008. (Petr.'s Resp. Respt.'s Supp'l Br. 4.)

On August 19, 2008, Petitioner filed the current federal petition seeking a one-year RDAP sentence reduction. Petitioner contends that the BOP's categorical exclusion rule violates the Administrative Procedure Act's[2] ("APA") prohibition on arbitrary and capricious agency action. (Pet. 9.)[3] Specifically, Petitioner argues that the BOP has failed to state any valid

---

[2] 5 U.S.C. § 500 *et seq.*

[3] Petitioner has inserted a non-consecutively paginated section between pages three and four of the pre-numbered form. This citation also corresponds to page 6 of the supporting facts for ground one.

2

rationale for the regulation. Respondent claims, *inter alia*, that Petitioner's claims lack merit.[4] Because the BOP has stated a valid rationale for its categorical exclusion in conjunction with a new rule that it may apply to Petitioner, the Court will DISMISS the petition.

## II. History of the Challenged Regulation

The regulation at issue here represents the latest in a long history of attempts by the BOP to deny, categorically, the RDAP sentence reduction to all inmates convicted of crimes involving firearms. Early release under the RDAP program is governed by 18 U.S.C. § 3621(e)(2)(B) ("the RDAP statute"), which provides that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B), *as amended by* Violent Crime Control and Law Enforcement Act of 1994, 103 Pub. L. No. 322, § 32001, 108 Stat. 1796, 1896-97 (1994). This provision "establishes two prerequisites for sentence reduction: conviction of a nonviolent offense and successful completion of drug treatment." *Lopez v. Davis*, 531 U.S. 230, 239 (2001) (internal citation omitted).

In May 1995, the BOP promulgated rules rendering those inmates ineligible for early release "whose current offense falls under the definition [of a crime of violence] in 18 U.S.C. § 924(c)(3)."[5] 60 Fed. Reg. 2762-01 (May 25, 1995). Several months later, the BOP issued a

---

[4] In the interest of judicial economy, the Court will decide this case on the merits of Petitioner's claims rather than on Respondent's procedural defense.

[5] At the time, 18 U.S.C. § 924(c)(3) defined a crime of violence as a felony that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

3

program statement that expanded its definition of "crimes of violence" to include, *inter alia*, any conviction for possession of a controlled substance where the sentencing court applied an enhancement under the United States Sentencing Guidelines for the possession of a firearm.[6] BOP Program Statement No. 5162.02, § 9 (July 24, 1995).

A disagreement arose among the United States Courts of Appeals as to whether the July 24, 1995 Program Statement rested on a permissible interpretation of "crimes of violence" as used in the RDAP statute. *See Arrington v. Daniels*, 516 F.3d 1106, 1110 (9th Cir. 2008) (outlining circuit split). At issue was whether the RDAP statute "required the Bureau to look only to the offense of conviction (drug trafficking) and not to sentencing factors" in determining RDAP sentence reduction eligibility. *Lopez*, 531 U.S. at 234. The BOP responded by issuing an interim rule that relied on "the discretion allotted to the Director of the [BOP] in granting a sentence reduction" rather than the statutory definition of a violent crime. 62 Fed. Reg. 53690 (Oct. 15, 1997). The interim rule categorically denied RDAP sentence reductions to all prisoners convicted of offenses "inolv[ing] the carrying, possession, or use of a firearm or other dangerous weapon or explosives." *Id.* at 53691, *codified at* 28 C.F.R. § 550.58(a)(vi)(B) (1998).[7]

---

[6] The program statement defined "crimes of violence" in varying ways, including: manufacturing, importing, or delivering armor piercing ammunition under 18 U.S.C. §§ 922(a)(7), (a)(8), (b)(5); delivery of a firearm to an indicted or convicted felon, a fugitive from justice, a person who "has been adjudicated as a mental defective [or] committed to any mental institution," or a person subject to a restraining order under 18 U.S.C. §§ 922 (d)(1)-(2), (d)(4), (d)(8); possession of a firearm by a convicted felon under 18 U.S.C. § 922(g); and firearms licensing violations under 26 U.S.C. § 5861. *See* BOP Program Statement No. 5162.02, § 7. The program statement also interpreted "crimes of violence" to include certain convictions to which the sentencing court applied base level increases under the United States Sentencing Guidelines. *See* BOP Program Statement No. 5162.02, § 8.

[7] The BOP subsequently promulgated a final version of the interim rule with the same rationale and effect. 65 Fed. Reg. 80745, 80748 (Dec. 22, 2000) (stating that the RDAP "reduction in sentence is an incentive to be exercised at the discretion of the [BOP]").

Another round of litigation ensued, this time over whether the RDAP statute permitted the BOP to exercise its discretion to categorically deny the RDAP sentence reduction to all inmates who possessed a firearm in connection with their offenses. The Supreme Court in *Lopez* found that the RDAP statute granted the necessary discretion, explaining that "[i]f [the statutory requirements of successful completion of the RDAP program and conviction of nonviolent offense] are met, the [BOP] 'may,' but also may *not*, grant early release." 531 U.S. at 239. The Supreme Court also found that the BOP "reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." *Id.* at 244. The Court therefore concluded that the RDAP statute authorized the BOP to promulgate the interim rule.

Subsequently, the United States Court of Appeals for the Ninth Circuit found that the BOP failed to explain the purpose for issuing the new rule, rendering the rule arbitrary and capricious under the APA. *Arrington*, 516 F.3d at 1116. The *Arrington* court first concluded that evidence that the BOP had actually intended to promote public safety in adopting the rule was "entirely absent from the administrative record." *Id.* at 1113. The *Arrington* court then found that uniformity, the second justification for the regulation, did not adequately explain why the BOP chose categorical exclusion over other possible solutions, such as categorical *in*clusion. Accordingly, the court in *Arrington* concluded that 28 C.F.R. § 550.58(a)(1)(vi)(B) was arbitrary and capricious under 5 U.S.C. § 706(2)(A).

The BOP has since promulgated a substantively identical rule that denies early release to inmates with a current felony conviction for "[a]n offense that involved the carrying, possession,

or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device." 28 C.F.R. § 550.55(b)(5)(ii) (2009). The new rule was issued in conjunction with the following statement of purpose:

> There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in *Lopez v. Davis*, "denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." [531 U.S. at 240]. The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.
> ... [T]he specified elements of these offenses pose a significant threat of dangerousness or violent behavior to the public. This threat presents a potential safety risk to the public if inmates who have demonstrated such behavior are released to the community prematurely. Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the court deemed appropriate to impose.

74 Fed. Reg. 1892, 1895 (Jan. 14, 2009). Thus, the BOP clearly invokes public safety as the rationale for issuing the new rule.

### III. Analysis

A brief discussion of general administrative law principles provides context for understanding the relevant decisions.

#### A. Reviewing an Agency's Interpretation of its Statutory Grant of Power

Administrative agencies such as the BOP exist because "in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta v. United*

6

*States*, 488 U.S. 361, 372 (1989). Agencies act within a statutory scheme that "'clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority'" pursuant to an "'intelligible principle to which the [agency] is directed to conform.'" *Id.* at 372-73 (*quoting Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946); *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). Although agencies may not exceed their statutory grant of power, execution of an agency's responsibility inescapably "requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 (1974).

When evaluating such an agency-created policy, Courts initially should determine whether Congress granted to the agency the necessary discretion. Courts must first examine the statute to decide "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). If Congress has left the matter to the agency's discretion by enacting a statute that "is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843; *see also Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.*, 542 F.3d 424, 433 (4th Cir. 2008) (inquiring initially as to whether agency's interpretation of statute "exceed[ed] its regulatory authority or is otherwise impermissible") (*citing West Virginia v. Thompson*, 475 F.3d 204, 209 (4th Cir. 2007)). The agency's interpretation is entitled to deference if it "fills a gap or defines a term in a way that

7

reasonable in light of the legislature's revealed design." *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995) (*citing Chevron*, 467 U.S. at 844).

### B. Reviewing the Manner in which an Agency Exercises Power Granted by Statute

An agency with discretion to issue a particular regulation may nevertheless violate the APA because of the manner in which it was promulgated. 5 U.S.C. § 500 *et seq.* The APA requires courts to set aside rules that are "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[8] This "'narrow' standard of review [requires] that an agency 'examine the relevant data and articulate a satisfactory explanation for its action.'" *FCC v. Fox Television Stations, Inc.*, 509 U.S. ----, 129 S. Ct. 1800, 1810 (2009) (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). An explanation is satisfactory when it shows a "'rational connection between the facts found and the choice made'" after consideration of all important aspects of the problem pursuant to criteria permitted by statute. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43

---

[8] Courts have contemplated whether the BOP's enactment of this regulation is subject to judicial review under the APA. Section 706 of the APA, and its grant of judicial review, does not apply to "any determination, decision, or order" made under the RDAP statute. 18 U.S.C. § 3625. The Court agrees with, and Respondent does not contest, the majority position that "the BOP's categorical exclusion by rule of a class of prisoners is not the kind of retrospective particularized fact-finding for each prisoner that would render such an exclusion an adjudication, and thereby preclude . . . judicial review." *Minotti v. Whitehead*, 584 F. Supp. 2d 750, 761-62 (D. Md. 2008) (*citing* 5 U.S.C. § 551(4) (defining "rule" as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law"); 5 U.S.C. § 551(6)-(7) (defining "adjudication" as an "agency process for the formulation . . . of a final disposition . . . of an agency in a matter other than rule making"); *Pullie v. Stansberry*, No. 2:08cv442, 2009 WL 2176120, at *3 (E.D. Va. July 15, 2009); *see also Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998) (concluding that "§ 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions"); *but see Riopelle v. Eichenlaub*, No. 2:08cv11754, 2008 WL 2949236, at *2 (E.D. Mich. July 29, 2008) (holding that the rule at issue is not subject to arbitrary and capricious review under the APA).

(quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *see also Md. Dep't of Health & Mental Hygiene*, 542 F.3d at 428 (setting forth factors relevant to arbitrary and capricious analysis) (*quoting West Virginia v. Thompson*, 475 F.3d at 209). If the agency has exercised its reasoned judgment, a reviewing "'court is not to substitute its judgment for that of the agency.'" *Fox Television Stations, Inc.*, 129 S. Ct. at 1810 (*quoting Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

Although courts defer to well-reasoned decisions by agencies, courts "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see also Eggers v. Clinchfield Coal Co.*, 29 F. App'x 144, 150 n.6 (4th Cir. 2002) (No. 01-1198), *available at* 2002 WL 214502, at *5 (explaining that courts may not affirm agency action "based on a rationale which the court could posit as '[t]he only way to make sense of' an agency's action" (alteration in original) (*quoting Md. People's Counsel v. F.E.R.C.*, 761 F.2d 768, 775 (D.C. Cir. 1985) (Scalia, Circuit Judge)). Courts may, however, "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Fox Television Stations, Inc.*, 129 S. Ct. at 1810 (*quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974)). Moreover, courts should uphold regulations for which "'the necessary articulation of basis for administrative action [can] be discerned by reference to clearly relevant sources other than a formal statement of reasons.'" *Amoco Oil Co. v. EPA*, 501 F.2d 722, 742 n.53 (D.C. Cir. 1974) (*quoting Envtl. Def. Fund, Inc. v. EPA*, 465 F.2d 528, 537 (1972)); *see also Gatewood v. Outlaw*, 560 F.3d 843, 847 (8th Cir. 2009) (explaining, when upholding BOP's categorical exclusion rule, that "rulemaking decisions, which are prospective and legislative in nature, need

9

not be made on a confined administrative record"), *pet. for cert. filed*, No. 09-5089 (June 23, 2009). Indeed, "'on occasion, regulations with no statement of purpose have been upheld where the agency's purpose was considered obvious and unmistakable.'" *Citizens to Save Spencer County v. EPA*, 600 F.2d 844, 884 (D.C. Cir. 1979) (*quoting Tabor v. Joint Bd. for Enrollment of Actuaries*, 566 F.2d 705 (D.C. Cir. 1977)).

### C. The BOP's Rationale for the Categorical Exclusion Rule

Petitioner does not present a novel claim. Although Petitioner never explicitly cites the case, he quotes extensively from, and relies on the reasoning in, the Ninth Circuit's decision in *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008). No court outside of the Ninth Circuit has adopted the holding in *Arrington*. Some courts have interpreted the Supreme Court's ruling in *Lopez* to preclude an APA challenge to 28 C.F.R. § 550.58(a)(1)(vi)(B) on the grounds of arbitrariness.[9] Others, including a court in this District, have found that the BOP sufficiently expressed the public safety rationale in the record to explain and issue the rule pursuant to the APA.[10] Another court has upheld the regulation solely on the strength of the uniformity rationale. *See Minotti*, 584 F. Supp. 2d at 765.

---

[9] *See, e.g., Harrison v. Lamanna*, 19 F. App'x 342 (6th Cir. 2001) (No. 01-3050), *available at* 2001 WL 1136080, at *1; *but see Alnoubani v. Fed. Bureau of Prisons*, 306 F. App'x 309, 312 (7th Cir. 2009) (No. 08-1685), *available at* 2009 WL 102126, at *2 (holding that district court erred in finding that *Lopez* decided question of arbitrariness and remanding for further proceedings).

[10] *See, e.g., Gatewood*, 560 F.3d at 847; *Pullie v. Stansberry*, No. 2:08cv442, 2009 WL 217610, at *5 (July 15, 2009); *Muolo v. Quintana*, 593 F. Supp. 2d 776, 786 (W.D. Pa. 2009) (concluding that the explanation was "evident from review of the litigation to which the Bureau referred in the Federal Register" over the original policy statement, which provided that the "'possession of a dangerous weapon during commission of a drug offense poses a substantial risk that force may be used against persons or property'" (*quoting* BOP Policy Statement 5162.02, § 9)).

More recently, courts have held that the BOP may apply the new rule codified at 28 C.F.R. § 550.55(b)(5)(ii), including its explicitly stated public safety rationale, to convictions occurring prior to its effective date without violating retroactivity principles. *Hicks v. Fed. Bureau of Prisons*, 603 F. Supp. 2d 835 (D.S.C. 2009); *Pullie*, 2009 WL 217610, at *5-6; *Crist v. Bledsoe*, No. 1:09cv00512, 2009 WL 1139832, at *4 (M.D. Pa. Apr. 28, 2009). If the BOP may, as Respondent argues, apply the new rule to Petitioner, Townes could not prevail.[11]

D. <u>Retroactivity</u>

"The general rule in the statutory context is that '[a]bsent an express directive from Congress, [a court] must apply a newly enacted statute to pending cases unless doing so would give the statute 'retroactive effect.'"" *Hicks v. Fed. Bureau of Prisons*, 603 F. Supp. 2d 835, 841 (D.S.C. 2009) (alterations in original) (*quoting Alexander v. Boyd*, 113 F.3d 1373, 1387 (4th Cir. 1997)) "The same logic applies in the regulatory context." *Id.* A "retroactive effect" is one that would "'would impair rights [Petitioner] possessed when he acted, increase [Petitioner's] liability for past conduct, or impose new duties with respect to transactions already completed.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (*quoting Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)); *see also Landgraf*, 511 U.S. at 277 (explaining "'the principle that a court is to apply the law in effect at the time it renders its decision'" unless the legislature has

---

[11] Indeed, even the *Arrington* Court reiterated that it saw "'nothing unreasonable in the Bureau's making the common-sense decision that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in their felonious employment, even if they have wound up committing a nonviolent offense.'" 516 F.3d at 1115 (*quoting Bowen v. Hood*, 202 F.3d 1211, 1219 (9th Cir. 2000)). The Ninth Circuit merely found that the BOP had only articulated this rule during litigation and not in the record, rendering it a "'*post hoc* rationalization[]' . . . . that we are forbidden to consider in conducting review under the APA." *Id.* at 1113 (*quoting Burlington Truck Lines, Inc.*, 371 U.S. at 168.

11

directed otherwise, or injustice or retroactive effect results (*quoting Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711 (1974))).

Both the new rule and its predecessor categorically deny early release eligibility to offenders who, like Townes, were convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g). Applying the new rule to Petitioner does not result in an impermissible retroactive effect because the new rule does not impair any rights previously held by Townes, does not increase Townes's liabilty for past conduct, and does not impose new duties in any completed transactions on Townes. *See Hicks,* 603 F. Supp. 2d at 841-42 (concluding that the "'new rule constitutes a clarification - rather than a substantive change - of the law as it existed beforehand, [such that the rule may be applied] to pre-promulgation conduct.'") (*quoting Levy v. Sterling Holding Co., LLC*, 554 F.3d 493, 506 (3d Cir. 2008)). The BOP's decision to deny early release to Petitioner may be evaluated pursuant to the more fulsome explanation given for the rule promulgated after his denial, and that explanation satisfies APA requirements. *Id.* at 842; *Pullie,* 2009 WL 2176120, at *6. Because the BOP may apply the new rule found at 28 C.F.R. § 550.55(b)(5)(ii), Petitioner's claim lacks merit. Respondent's motion to dismiss will be GRANTED.

## IV. Conclusion

For the foregoing reasons, Respondent's motion to dismiss (Docket No. 9) will be GRANTED. The Court shall DISMISS Petitioner's claim. The petition for a writ of habeas corpus (Docket No. 1) will be DENIED.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 9-30-09